VIRGINIA: IN THE CIRCUIT COURT FOR THE CITY OF NORFOLK

JOHN A. THOMPSON

        Plaintiff,

v.                                              CL:

FRANCES M. MARTIN, M.D.,

MICHAEL B. WILLIAMS, M.D.,

PAUL D. MCCLAIN, M.D.,

ELIZABETH ROGER, M.D.,

UROLOGY OF VIRGINIA, PLLC,

AND

EVMS ACADEMIC PHYSICIANS AND SURGEONS HEALTH SERVICES
FOUNDATION d/b/a EVMS HEALTH SERVICES,

        Defendants.

## COMPLAINT

Plaintiff, John A. Thompson, by counsel, moves this Honorable Court for judgment, pre and post-judgment interest and award of execution against the defendants, Frances M. Martin, M.D., Michael B. Williams, M.D., Paul D. McClain, M.D., Elizabeth Roger, M.D., Urology of Virginia, PLLC, and EVMS Academic Physicians and Surgeons Health Services Foundation d/b/a EVMS Health Services, jointly and severally, on the grounds and in the amount set forth below.

1. Plaintiff John A. Thompson ("Mr. Thompson") is an adult citizen and resident of Virginia.

2. At all material times, Mr. Thompson was a patient of the defendants.

GOVERNMENT EXHIBIT A

3. Defendant Frances M. Martin, M.D. ("Dr. Martin") was at all material times a physician licensed to practice medicine in the Commonwealth of Virginia and engaged in the practice of urology.

4. At all material times, Dr. Martin was an employee and/or agent of Defendant Urology of Virginia, PLLC, and was acting within the scope of her employment.

5. At all material times, Dr. Martin was a urologist responsible for providing medical care and treatment to her patient, Mr. Thompson.

6. At all material times, Dr. Martin owed a duty to Mr. Thompson to exercise that degree of care, skill, and diligence that a surgeon in like circumstances would have provided.

7. Defendant Michael B. Williams, M.D. ("Dr. Williams") was at all material times a physician licensed to practice medicine in the Commonwealth of Virginia and engaged in the practice of urology.

8. At all material times, Dr. Williams was an employee and/or agent of Defendant Urology of Virginia, PLLC, and was acting within the scope of his employment.

9. At all material times, Dr. Williams was a urologist responsible for providing medical care and treatment to his patient, Mr. Thompson.

10. At all material times, Dr. Williams owed a duty to Mr. Thompson to exercise that degree of care, skill, and diligence that a urologist in like circumstances would have provided.

11. Defendant Paul D. McClain, M.D. ("Dr. McClain") was at all material times a physician licensed to practice medicine in the Commonwealth of Virginia and engaged in the practice of urology.

12. Upon information and belief, at all material times, defendant Dr. McClain was a resident physician who was under the supervision of employees and/or agents of Defendant Urology of Virginia, PLLC, including but not limited to Dr. Martin and Dr. Williams.

13. Upon information and belief, at all material times, defendant Dr. McClain was an employee and/or agent of Defendant and EVMS Academic Physicians and Surgeons Health Services Foundation d/b/a EVMS Health Services, and was acting within the scope of his employment.

14. At all material times, Dr. McClain was a physician responsible for providing medical care and treatment to his patient, Mr. Thompson.

15. At all material times, Dr. McClain owed a duty to Mr. Thompson to exercise that degree of care, skill, and diligence that a resident urologist in like circumstances would have provided.

16. Defendant Elizabeth Roger, M.D. ("Dr. Roger") was at all material times a physician licensed to practice medicine in the Commonwealth of Virginia and engaged in the practice of urology.

17. Upon information and belief, at all material times, defendant Dr. Roger was a resident physician who was under the supervision of employees and/or agents of Defendant Urology of Virginia, PLLC, including but not limited to Dr. Martin and Dr. Williams.

18. Upon information and belief, at all material times, defendant Dr. Roger was an employee and/or agent of Defendant and EVMS Academic Physicians and Surgeons Health Services Foundation d/b/a EVMS Health Services, and was acting within the scope of her employment.

19. At all material times, Dr. Roger was a physician responsible for providing medical care and treatment to her patient, Mr. Thompson.

20. At all material times, Dr. Roger owed a duty to Mr. Thompson to exercise that degree of care, skill, and diligence that a resident urologist in like circumstances would have provided.

21. At all material times, Defendant Urology of Virginia, PLLC ("Urology of Virginia") was a professional corporation organized and existing under the laws of the Commonwealth of Virginia, which held itself out to the public as competent and qualified to render medical and surgical services, by and through its agents and/or employees including but not limited to Dr. Martin, Dr. Williams, Dr. McClain, and Dr. Roger.

22. Urology of Virginia through its agents and/or employees, Dr. Martin, Dr. Williams, Dr. McClain, and Dr. Roger, and through other agents and/or employees, provided medical care and surgical care to Mr. Thompson.

23. By the doctrine of *respondeat superior*, defendant Urology of Virginia is vicariously liable for the negligence and breaches of the standard of care of its employees and agents, including Dr. Martin, Dr. Williams, Dr. McClain, and Dr. Roger.

24. At all material times, Defendant EVMS Academic Physicians and Surgeons Health Services Foundation d/b/a EVMS Health Services ("EVMS") was a professional corporation organized and existing under the laws of the Commonwealth of Virginia, which held itself out to the public as competent and qualified to render medical and surgical services, by and through its agents, employees, and/or residents including Dr. McClain and Dr. Roger.

25. By the doctrine of *respondeat superior*, defendant EVMS is vicariously liable for the negligence and breaches of the standard of care of its employees and agents, including Dr. McClain and Dr. Roger.

26. On or about May 3, 2018, Mr. Thompson was admitted by Frances M. Martin, M.D. to Sentara Norfolk General Hospital for right robotic assisted laparoscopic partial nephrectomy to remove a renal mass.

27. At or about 09:24, Dr. Martin began the procedure. Paul D. McClain, M.D. and Randy Henderson assisted.

28. Intraoperatively, a frozen section of the renal mass returned positive for renal cell carcinoma.

29. At or about that time, Dr. Martin converted the procedure to a total nephrectomy.

30. At or about 14:17, Mr. Thompson was transferred to the PACU.

31. Dr. Martin noted that Mr. Thompson awoke from surgery complaining of left hip tenderness. Dr. Martin noted she wanted labs to check Mr. Thompson's electrolytes, renal function, and creatinine kinase (CPK).

32. At or about 14:23, Dr. McClain entered an order for CPK labs.

33. At or about 14:47, Dr. McClain entered an order for CPK labs to be drawn at 04:00 on May 4, 2018.

34. At or about 15:34, the CPK lab ordered at 14:23 was resulted with a level of 9,257.

35. At or about 16:16, Elizabeth Roger, M.D. noted the elevated CPK levels of 9,257 and that Mr. Thompson reported pain in his left hip. Dr. Roger indicated she would continue to monitor for signs of compartment syndrome with neurovascular checks every four hours and to recheck CPK in 3 hours.

36. At or about 16:24, Dr. Roger entered an order for CPK labs to be drawn at 19:00.

37. At or about 16:34, Dr. Roger entered an order for neurovascular checks to be completed every four hours.

38. At or about 17:56, Dr. McClain noted Mr. Thompson had left hip pain. He documented obtaining repeat CPK labs.

39. At or about 20:00, Nurse Willis noted Mr. Thompson had disproportionate pain and that a provider was notified.

40. At or about 20:26, a blood specimen was collected pursuant to Dr. Roger's 16:24 order for CPK labs.

41. At or about 21:28, a CPK level of 41,230 was resulted and called to Nurse Willis.

42. There is no documentation in the medical record that a physician ever obtained the CPK lab value of 41,230.

43. On May 4, 2018, at or about 04:35, a CPK level of 40,460 was resulted.

44. At or about 06:46, Dr. McClain evaluated Mr. Thompson, noting pain in his left hip. Dr. McClain indicated in his plan and assessment that he would request an orthopedic consult to evaluate the left gluteal compartment.

45. Attending physician, Michael B. Williams, M.D., agreed with Dr. McClain's assessment.

46. At or about 07:10, Austin Nabet, D.O., evaluated Mr. Thompson and diagnosed him with left gluteal compartment syndrome and rhabdomyolysis.

47. At or about that time, attending orthopedic surgeon Suneel B. Bhat, M.D., planned for urgent fasciotomy of left gluteal compartments and irrigation and debridement in the next available operating room.

48. At or about 09:55, Mr. Thompson entered the OR where he underwent fasciotomies of three left gluteal compartments and left gluteal compartment irrigation and debridement.

49. On May 6, 2018, Dr. Bhat performed a left gluteal second look irrigation and debridement and left gluteal VAC placement. Approximately 50% of the gluteus medius was removed and approximately 10% of the gluteus maximus was removed.

50. On May 10, 2018, Harry Molligan, M.D., performed further wound debridement down to the muscle and bone of the ilium, irrigation, and placement of a wound VAC.

51. On May 12, 2018, Colin Crickard, M.D., performed left gluteal compartment irrigation and debridement, including full thickness debridement of the gluteus medius down to a bone of the ileum, and the gluteus minimus was debrided in its entirety.

52. On May 14, 2018, Richard Myers, M.D. performed debridement of bone and left gluteal compartments with delayed primary closure.

53. On or about May 15, 2018, Mr. Thompson received a blood transfusion for down-trending hemoglobin.

54. On or about May 16, 2018, the hemovac was removed.

55. On or about May 18, 2018, Mr. Thompson was discharged to a skilled nursing facility for rehabilitation.

56. At all material times, defendants were negligent and breached the standard of care in their medical care, including but not limited to, failing to appropriately monitor Mr. Thompson's CPK levels, failing to appreciate the severity of Mr. Thompson's condition, failing to timely respond to elevated CPK levels, failing to timely address Mr. Thompson's compartment syndrome, failing to timely call for an orthopedic consult, and their failure to act as reasonably prudent urologists would have acted under the circumstances consistent with the standard of care.

7

57.     As a direct and proximate result of the defendants' negligent acts and omissions, Mr. Thompson suffered serious and permanent injuries, including tissue death related to left gluteal compartment syndrome, underwent additional surgical procedures and hospitalizations, experienced and will continue to experience pain, suffering, mental anguish, emotional distress, embarrassment, inconvenience, medical expenses, lost wages, and other damages and losses recognized by Virginia law.

WHEREFORE, Plaintiff, John A. Thompson, demands judgment against defendants, Frances M. Martin, M.D., Michael B. Williams, M.D., Paul D. McClain, M.D., Elizabeth Roger, M.D., Urology of Virginia, PLLC, and EVMS Academic Physicians and Surgeons Health Services Foundation d/b/a EVMS Health Services, jointly and severally, for the sum of FIVE MILLION DOLLARS ($5,000,000.00) in damages, plus pre and post-judgment interest as allowed by law, plus Plaintiff's costs expended in this action.

**TRIAL BY JURY IS DEMANDED.**

JOHN A. THOMPSON

By: _____
Of Counsel

Amberley G. Hammer, Esquire (VSB #42786)
Allison S. Handler, Esquire (VSB #88468)
Hammer Law, P.C.
Liberty Executive Park – Liberty III
1317 Executive Boulevard, Suite 150
Chesapeake, Virginia 23320
(757) 670-3868 (Telephone)
(757) 670-3865 (Facsimile)